UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| v. | |
| IBC MANUFACTURING COMPANY (FORMERLY KNOWN AS CHAPMAN CHEMICAL COMPANY), HARTFORD ACCIDENT AND INDEMNITY COMPANY, FIRST STATE INSURANCE COMPANY, and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, | CAUSE NO. _____ |
| Defendants. | |

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff Berkshire Hathaway Specialty Insurance Company alleges as follows:

**PARTIES**

1.      Plaintiff Berkshire Hathaway Specialty Insurance Company, formerly known as Stonewall Insurance Company ("Stonewall"), is a Nebraska corporation with its principal place of business in Omaha, Nebraska.

2.      Upon information and belief, Defendant IBC Manufacturing Company, formerly known as Chapman Chemical Company ("Chapman"), is a corporation organized under the laws of Delaware with its principal place of business in Memphis, Tennessee.

3.      Upon information and belief, Defendant Hartford Accident and Indemnity Company ("Hartford") is a corporation organized under the laws of Connecticut with its principal place of business in Hartford, Connecticut.

4. Upon information and belief, Defendant First State Insurance Company ("First State") is a corporation organized under the laws of Connecticut with its principal place of business in Hartford, Connecticut.

5. Upon information and belief, Defendant American Guarantee and Liability Insurance Company ("American Guarantee") is a corporation organized under the laws of New York with its principal place of business in Schaumburg, Illinois.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction over the Defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure and Tennessee Code Annotated § 20-2-214 in that the Defendants, *inter alia*, are or were authorized to do business in Tennessee and have, in fact, transacted business in Tennessee.

7. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1332 because complete diversity exists among the parties and the total amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the contracts of insurance as described herein were issued to the insured in this District, and therefore a substantial part of the events giving rise to the claim occurred therein.

## THE INSURANCE POLICIES

9. Stonewall issued umbrella liability policy number 56008807 to Chapman for the period of January 8, 1982, to January 8, 1983. A true and correct copy of Stonewall policy number 56008807 is attached hereto as Exhibit A.

10. Stonewall issued umbrella liability policy number 56012603 to Chapman for the period of January 8, 1983, to January 8, 1984. A true and correct copy of Stonewall policy

number 56012603 is attached hereto as Exhibit B.  Stonewall policy numbers 56008807 and 56012603 are hereinafter referred to as the "Stonewall Policies."

11. The Stonewall Policies were issued to Chapman in Memphis, Tennessee. Therefore, pursuant to Tennessee Code Annotated § 56-7-102, the Stonewall Policies were made in Tennessee and must be construed solely according to Tennessee law.

12. Subject to the limits of liability, exclusions, conditions, declarations, and other terms of the Stonewall Policies, the Stonewall Policies contain the following Insuring Agreements:

> I. **COVERAGES**:  To indemnify the Insured for all sums which the Insured shall be obligated to pay by reason of the liability imposed upon him by law or liability assumed by him under contract or agreement for damages and expenses, all as included in the definition of "ultimate net loss", because of:
>
> (A) personal injury, as hereinafter defined;
> (B) property damage, as hereinafter defined;
> (C) advertising liability, as hereinafter defined.
>
> \*   \*   \*
>
> III. **POLICY PERIOD**:  This policy applies only to occurrences as herein defined, which happen during the policy period; provided however, if any occurrence happens during the policy period of this policy which results in personal injury, property damage or advertising liability of the type which would be insured under the provisions of this policy and if personal injury, property damage or advertising liability resulting from that same occurrence has also happened during the policy period of any similar policy of insurance issued by the Company to any Named Insured hereunder prior to the policy period of this policy, that policy issued by the Company which is in force at the time the first claim is made against the Insured which could result in ultimate net loss payable thereunder shall constitute the only policy of the Company which shall apply to such occurrence and to all personal injury, property damage and advertising liability (either alone or in combination) at any time resulting from such occurrence, regardless of the number of similar policies of insurance issued by the Company which could otherwise apply in the absence of this agreement.

13. The Stonewall Policies, as amended by endorsement, define the term "property damage" to mean "(1) physical injury to, or destruction of, tangible property, including the loss

of use thereof, or (2) loss of use of tangible property which has not been physically injured or destroyed, provided such loss of use is caused by an occurrence during the policy period."

14. The Stonewall Policies define the term "ultimate net loss" as follows:

[T]he total sum which the Insured, or any company as his insurer, or both, becomes legally obligated to pay as damages, because of personal injury, property damage, or advertising liability, either through adjudication or compromise, and shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest on judgments, expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, excluding only the salaries of the Named Insured's or of any underlying insurer's permanent employees.

The Company shall not be liable for any expenses as aforesaid when payment of such expenses is included in other valid and collectible insurance.

15. The Stonewall Policies define the term "occurrence" as follows, in relevant part:

(a) [A]n accident, or (b) an event, or continuous or repeated exposure to conditions, which results during the policy period, in personal injury, property damage, or advertising liability (either alone or in combination) neither expected nor intended from the standpoint of the Insured.  With respect to coverages I. (A) and I. (B), except for the products-completed operations hazards, all personal injury and property damage (either alone or in combination) arising out of one event or continuous or repeated exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed to be one occurrence.

16. The Stonewall Policies each contain the following exclusion (the "Owned Property Exclusion"):

I. This policy does not apply,

\*     \*     \*

(H) to injury to or destruction of property owned by any Insured[.]

17. The Stonewall Policies each contain the following exclusion (the "Pollution Exclusion"):

I. This policy does not apply,

\*    \*    \*

(I) as respects all operations:

(1) to the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials, or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water unless such discharge, release or escape is sudden and accidental;

(2) to fines, penalties, punitive or exemplary damages; or the cost of removing or cleaning up substances described in (1) above. This limitation (2) applies only to occurrences described in (1) above.

18. The Stonewall Policies each contain the following conditions, quoted in relevant part:

**5. Limits of Liability**.

(A) The Company shall only be liable for ultimate net loss in excess of either:

(i) the applicable limits of liability of the policies of underlying insurance set forth in the Schedule of Underlying Insurance; or
(ii) as respects an occurrence not covered by such underlying insurance, but covered under this policy; or where an occurrence is covered by such underlying insurance but in recoverable amounts less than the self-insured retention set forth in Item 3(c) of the Declarations, the amount of ultimate net loss set forth in Item 3(c) of the Declarations as "Self-Insured Retention."

(B) In no event shall the Company be liable for an amount in excess of the applicable limit of liability set forth in Item 3(a) of the Declarations. The limit of liability stated in Item 3(a) of the Declarations as applicable to "Each Occurrence" is the total limit of the Company's liability under this policy for ultimate net loss as a result of any one occurrence. …

(C) In the event of reduction or exhaustion of the aggregate limits of liability under the policies of underlying insurance by reason of losses paid thereunder, this policy shall:

(i) in the event of reduction, pay excess of the reduced underlying insurance, and
(ii) in the event of exhaustion, continue in force as underlying insurance.

\*   \*   \*

7. **Notice of Occurrence**. When an occurrence takes place which, in the opinion of the Insured, involves or may involve liability on the part of the Company, prompt written notice shall be given by or on behalf of the Insured to the Company. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence. Failure to so notify the Company of any occurrence which at the time of its happening did not appear to involve this policy but which, at a later date, would appear to give rise to a claim hereunder shall not prejudice such claim provided such notice is then given.

8. **Assistance and Cooperation of the Insured**. Except when the aggregate limits of liability under the policies of underlying insurance set forth in the Schedule of Underlying Insurance have been exhausted, the Company shall not be called upon to assume charge of the settlement or defense of any claim made, suit brought or proceeding instituted against the Insured, but the Company shall have the right and shall be given the opportunity to associate with the Insured or the Insured's underlying insurer(s), or both, in the defense and control of any claims, suit or proceeding relative to an occurrence where, in the judgment of the Company, the claim or suit involves or appears reasonably likely to result in liability for indemnity by the Company under this policy, in which event the Insured, any underlying insurer(s) involved, and the Company, shall cooperate in all things in the defense of such claim or suit.

With respect to any claim made, suit brought or proceeding instituted against the Insured to which the policies of underlying insurance set forth in the Schedule of Underlying Insurance will not apply because of the exhaustion of the aggregate limits of liability thereunder, if such claim, suit or proceeding is one which could result in liability of the Company to indemnify the Insured hereunder for damages, the Company shall assume compete control of the investigation, negotiations, settlement and defense of any such claim, suit or proceeding against the Insured. The Insured shall cooperate with the Company and, upon the Company's request, attend hearings and trials and assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject matter of this insurance. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the occurrence.

19. The Stonewall Policies each contain an endorsement, titled "DEFENSE COVERAGE ENDORSEMENT," which states as follows (original text in ALL CAPS):

It is agreed that the policy to which this endorsement is attached is amended to include the following additional insuring agreement:

Defense, Settlement, Supplementary Payments.

As respects occurrences covered under this policy, but not covered under the underlying insurance or under any other collectible insurance, the company shall:

(a) Defend in his name and behalf any suit against the Insured alleging liability insured under the provisions of this policy and seeking damages on account thereof: even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation and negotiation and settlement of any claim or suit as may be deemed expedient by the Company;

(b) Pay all premiums on bonds to release attachments for an amount not in excess of the limit of liability of this policy, all premiums on appeal bonds required in any such defended suit but without any obligation to apply for or furnish such bonds, all costs taxed against the Insured in any such suit, all expenses incurred by the Company and all interest accruing after entry of judgment until the Company has paid, tendered or deposited in court that part of such judgment as does not exceed the limit of the Company's liability thereon;

(c) Reimburse the Insured for all reasonable expenses, other than loss of earnings, incurred at the Company's request.

The Company agrees to pay the amounts incurred under this agreement, except in settlement of claims and suits, in addition to the limit of liability stated in the declarations and such defense and supplementary payments shall not be included as part of the ultimate net loss, as defined in the policy.

20.     Upon information and belief, Hartford issued a primary comprehensive general liability policy to Chapman and other entities with the policy number 23C727116 for the period January 8, 1982, to January 8, 1983, with limits of liability for property damage in the amount of $500,000 per occurrence.

21.     Upon information and belief, Hartford issued a primary comprehensive general liability policy to Chapman and other entities, also bearing the policy number 23C727116, for the period January 8, 1983, to January 8, 1984, with limits of liability for property damage in the amount of $500,000 per occurrence.

22. Upon information and belief, First State and American Guarantee issued or allegedly issued primary, umbrella, and/or excess liability policies to Chapman that actually or potentially cover defense and/or indemnity costs incurred in connection with the Underlying Claims (as that term is defined herein). Hartford, First State, and American Guarantee are made parties to this action in order that a full and complete resolution of the parties' rights and obligations with respect to insurance coverage for the Underlying Claims may be had.

## THE UNDERLYING CLAIMS

23. On August 26, 2015, Chapman sent a letter to Stonewall purporting to notify Stonewall of a claim made against Chapman by Joslyn (the "Joslyn Claim"), the former owner of property neighboring 10505 North Macrum Avenue, Portland, Oregon, property allegedly formerly owned by Chapman (the "Chapman Property"), and enclosing a June 1, 2015, letter from Joslyn's counsel describing the claim.

24. According to Joslyn's lawyer's June 1, 2015, letter, an entity called Columbia Steel Casting Co., Inc. ("Columbia Steel") had purchased the Chapman Property and the property formerly owned by Joslyn at 10425 North Bloss Avenue, Portland, Oregon, and, in the process of investigating both properties in order to satisfy requirements of the Oregon Department of Environmental Quality ("ODEQ"), discovered contamination, including high concentrations of dioxin, at the Chapman Property. The June 1, 2015, letter purported to inform Chapman that Chapman was implicated as a potentially responsible party with respect to the contamination and that Columbia Steel and Joslyn planned to perform remediation work at the property. The letter further indicated that the costs associated with this work were attributable to Chapman and demanded that Chapman participate in the defense of the ODEQ investigation.

25. Chapman's August 26, 2015 letter requested that Stonewall "fully investigate, defend and indemnify [Chapman]," and "reimburse [Chapman] for all sums that [Chapman has] incurred, or will incur, in connection with" the Joslyn Claim.

26. Stonewall acknowledged Chapman's August 26, 2015 letter via letter dated September 1, 2015.

27. On January 15, 2016, Stonewall sent a letter to Chapman reserving Stonewall's rights to deny coverage for the Joslyn Claim based on the existence of the Pollution Exclusion in the Stonewall Policies, to the extent that the property damage was expected or intended by Chapman, based on the lack of any evidence of exhaustion of the primary policies, and other bases, and requesting additional information.

28. In response to the January 15, 2016, letter, Stonewall received a letter from Chapman dated January 28, 2016, advising that Chapman disagreed with each of Stonewall's reservations of rights.

29. On March 1, 2016, in response to inquiries from Stonewall, Chapman sent a letter to Stonewall indicating that Chapman had also provided notice of the Joslyn Claim to Hartford and American Guarantee. The March 1, 2016, letter indicated that Hartford had responded with a reservation of rights letter and that American Guarantee had responded by stating that it was investigating but had not yet taken a position as to coverage.

30. On April 14, 2016, Chapman sent a letter to Stonewall indicating that Chapman had been contacted by Joslyn's counsel to advise Chapman that ODEQ would be proceeding directly against Chapman with respect to the Chapman Property (the "ODEQ Claim," collectively with the Joslyn Claim referred to as the "Underlying Claims"). The April 14, 2016

9

letter further stated that Chapman expected Zurich North America to provide defense costs and indemnify Chapman in connection with the ODEQ Claim.

31. On April 25, 2016, Stonewall sent Chapman a letter responding to Chapman's January 28, 2016, letter, further explaining Stonewall's reservation of rights with respect to Chapman's request for defense and indemnity for the Joslyn Claim.

32. On April 26, 2016, Chapman sent a letter to Stonewall indicating that the April 14, 2016 letter referenced Zurich North America in error, and that, in fact, Chapman expected Stonewall to provide defense and indemnity for the ODEQ Claim.

33. On April 29, 2016, Chapman sent another letter to Stonewall enclosing a letter from Joslyn's counsel updating Chapman with respect to the Joslyn Claim. The April 29, 2016 letter also enclosed an April 21, 2016 letter from ODEQ memorializing the ODEQ Claim.

## COUNT I
**(Declaratory Judgment—No Duty to Defend)**

34. Stonewall incorporates by reference the allegations in Paragraphs 1 through 33 above as if fully set forth herein.

35. Under the terms and conditions of the Stonewall Policies, Stonewall has no obligation to defend Chapman in respect of the Underlying Claims.

36. The Assistance and Cooperation of the Insured condition in the Stonewall Policies, as quoted above, provides that Stonewall generally "shall not be called upon to assume charge of the settlement or defense of any claim made, suit brought or proceeding instituted against the Insured…." The condition obligates Stonewall to "assume complete control of the investigation, negotiations, settlement and defense" only with respect to "any claim made, suit brought or proceeding instituted against the Insured to which the policies of underlying insurance set forth in the Schedule of Underlying Insurance will not apply because of the exhaustion of the

aggregate limits of liability thereunder, if such claim, suit or proceeding is one which could result in liability of [Stonewall] to indemnify the Insured hereunder for damages."

37. Upon information and belief, to the extent that the underlying Hartford primary general liability policies contain an aggregate limit of liability applicable to the Underlying Claims, that limit has not been exhausted.

38. Since the aggregate limit of liability in the underlying Hartford primary policies applicable to the Underlying Claims, if any, has not been exhausted, Stonewall is not obligated to "assume complete control of the investigation, negotiations, settlement and defense" of the Underlying Claims.

39. The DEFENSE COVERAGE ENDORSEMENT contained in the Stonewall Policies, as quoted above, applies only with respect to occurrences covered under the Stonewall Policies but not covered under the underlying Hartford policies or any other collectible insurance.

40. The Underlying Claims do not involve occurrences covered under the Stonewall Policies but not covered under the underlying Hartford policies or any other collectible insurance.

41. Since the Underlying Claims do not involve occurrences covered under the Stonewall Policies but not covered under the underlying Hartford policies or any other collectible insurance, Stonewall has no obligation to defend the Underlying Claims.

42. In addition, in the event that the DEFENSE COVERAGE ENDORSEMENT would somehow be deemed to apply, it requires Stonewall to defend only a "suit against the insured alleging liability insured under the provisions of" the Stonewall Policies.

43. The Underlying Claims do not involve a "suit against the insured," and therefore the DEFENSE COVERAGE ENDORSEMENT is not applicable to the Underlying Claims.

44. An actual controversy exists between Stonewall and Chapman regarding whether Stonewall has an obligation under the Stonewall Policies to defend Chapman in respect of the Underlying Claims.

## COUNT II
**(Declaratory Judgment— Pollution Exclusion)**

45. Stonewall incorporates by reference the allegations in Paragraphs 1 through 44 above as if fully set forth herein.

46. The April 21, 2016 letter from ODEQ to Chapman states that "operational activities by Chapman has resulted in the release of environmental contaminants including chlorophenols to soil, groundwater, and potentially sediment at and around" the Chapman Property.

47. The Joslyn Claim is based upon the same alleged environmental contamination as the ODEQ Claim as described in the April 21, 2016 letter.

48. The Pollution Exclusion contained in the Stonewall Policies, as quoted above, excludes coverage for damages resulting from the "…release…of…toxic chemicals… or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water unless such…release…is sudden and accidental" and does not cover the cost of cleaning up such toxic chemicals, irritants, contaminants, pollutants, or other defined substances.

49. Therefore, coverage for the Underlying Claims under the Stonewall Policies is excluded by the Pollution Exclusion.

50. An actual controversy exists between Stonewall and Chapman regarding whether the Pollution Exclusion contained in the Stonewall Policies excludes coverage for the Underlying Claims.

## COUNT III
**(Declaratory Judgment— Indemnification)**

51. Stonewall incorporates by reference the allegations in Paragraphs 1 through 50 above as if fully set forth herein.

52. An actual controversy exists between Stonewall and Chapman regarding whether Stonewall is required to indemnify Chapman for the Underlying Claims under the Stonewall Policies.

53. Stonewall is not required to indemnify Chapman for the Underlying Claims under the Stonewall Policies, in whole or in part, because, *inter alia*:

   a. All underlying primary liability insurance policies have not been exhausted;

   b. The Underlying Claims do not constitute an "occurrence" as that term is defined in the Stonewall Policies;

   c. The Underlying Claims allege property damage that occurred outside the policy periods of the Stonewall Policies;

   d. The costs for which Chapman seeks indemnity from Stonewall are not "damages" as that term is used in the Stonewall Policies;

   e. The Owned Property Exclusion excludes coverage for injury to or destruction of property owned by Chapman or any other Insured; and/or

   f. Chapman breached the Notice of Occurrence condition in the Stonewall Policies by failing to provide Stonewall with timely notice of the alleged occurrence.

## COUNT IV
### (Declaratory Judgment— Policy Period)

54. Stonewall incorporates by reference the allegations in Paragraphs 1 through 53 above as if fully set forth herein.

55. Insuring Agreement III., titled "Policy Period" and as quoted above, limits Chapman's recovery for any property damage covered under multiple policies issued to Chapman by Stonewall and resulting from the same occurrence to a single policy.

56. As applied to the Underlying Claims, Insuring Agreement III. provides that, to the extent Stonewall is found to have any coverage obligation for the Underlying Claims under both of the Stonewall policies, Chapman's recovery would be limited only to policy number 56008807.

57. An actual controversy exists between Stonewall and Chapman regarding whether Insuring Agreement III. in the Stonewall Policies limits Chapman's potential recovery in respect of the Underlying Claims.

## COUNT V
### (Declaratory Judgment— Pro Rata Allocation)

58. Stonewall incorporates by reference the allegations in Paragraphs 1 through 57 above as if fully set forth herein.

59. Upon information and belief, the Underlying Claims involve damages caused by alleged releases of toxic chemicals and other contaminants and/or pollutants into the environment over the course of many years.

60. To the extent that Stonewall is found to have any defense or indemnity obligation under the Stonewall Policies for the Underlying Claims, the Stonewall Policies require Stonewall

to pay only a pro rata share of indemnity costs or any defense costs paid as a consequence of a covered occurrence incurred by Chapman, based on the Stonewall Policies' time on the risk.

61. Such defense and indemnity costs incurred in connection with the Underlying Claims must be allocated to Chapman for any periods during which Chapman was uninsured, underinsured, self-insured, or insured by carriers that have since become insolvent.

62. An actual controversy exists between Stonewall and Chapman regarding the proper method of allocating the defense and indemnity costs incurred in connection with the Underlying Claims among the parties.

## COUNT VI
### (Declaratory Judgment— All Parties' Rights and Obligations)

63. Stonewall incorporates by reference the allegations in Paragraphs 1 through 62 above as if fully set forth herein.

64. Stonewall seeks a declaration of the rights and obligations of the parties under the insurance policies issued to Chapman by Stonewall, Hartford, First State, and American Guarantee with regard to Chapman's claim for coverage for costs incurred and to be incurred in connection with the Underlying Claims.

65. Declaratory relief would determine and establish the rights and obligations of all parties under the insurance policies issued to Chapman by Stonewall, Hartford, First State, and American Guarantee with regard to the Underlying Claims.

WHEREFORE, Stonewall prays for judgment in its favor and against all Defendants as follows:

A. Declaring that Stonewall has no obligation under the Stonewall Policies to defend Chapman in connection with the Underlying Claims;

B. Declaring that the Pollution Exclusion contained in the Stonewall Policies excludes coverage for the Underlying Claims, and therefore Stonewall has no obligation under the Stonewall Policies to defend or pay defense or indemnity costs in connection with the Underlying Claims by operation of the Pollution Exclusion;

C. Declaring that the Stonewall Policies do not obligate Stonewall to indemnify Chapman, in whole or in part, for the Underlying Claims;

D. Declaring that, to the extent that Stonewall is found to have any coverage obligation for the Underlying Claims under both of the Stonewall policies, Chapman's recovery would be limited only to Stonewall policy number 56008807;

E. Declaring that, to the extent that Stonewall is found to have any coverage obligation in connection with the Underlying Claims, Stonewall is obligated to pay only a pro rata share of defense and/or indemnity costs incurred by Chapman based on Stonewall's time on the risk;

F. Declaring that indemnity costs and defense costs paid as a consequence of a covered occurrence incurred in connection with the Underlying Claims must be allocated to Chapman for any periods during which Chapman was uninsured, underinsured, self-insured, or insured by carriers that have since become insolvent;

G. Declaring the rights and obligations of all of the parties with respect to Chapman's claim for coverage for costs incurred and to be incurred in connection with the Underlying Claims;

H. Awarding to Stonewall any recoverable costs in this action, including reasonable attorneys' fees; and

I. For all such other or further relief as the Court deems just and proper.

Dated:  May 10, 2016            Respectfully submitted,

                                                   GLANKLER BROWN, PLLC

By:     /s/ Larry H. Montgomery
        Larry H. Montgomery (9579)
        Andre B. Mathis (26458)
        6000 Poplar Avenue, Suite 400
        Memphis, TN 38119
        Tel:  (901) 576-1718
        Fax:  (901) 525-2389
        lmontgomery@glankler.com
        amathis@glankler.com

*Counsel for Plaintiff Berkshire Hathaway Specialty Insurance Company*

4821-4929-7457, v.  4